Call the next case please. Thank you. The floor is yours. Good morning, Your Honors. David Iskowich, ISKOWICH, with the Cook County State's Attorney for the People. Okay. The appellant, how much time do you want for rebuttal? A few minutes. Okay. All right. Let's proceed. As I stated, I'm Rebecca Levy from the Office of the State Appellant. I'm a federal defender, and I'm arguing on behalf of the defendant, Mr. Vershawn Williams. In our briefs, we argued that Vershawn was denied a fair trial on three different grounds, as well as cumulatively, the errors combined. I'm going to focus my argument today on how the first two issues combined prejudiced Vershawn when the court denied him his constitutional right to present a complete defense and by allowing the state to impeach him with a void conviction. You mean by firing the witness? Is that what you're talking about? Yes. Okay. His sister. What's your proposed standard of review on the judge's ruling on the issue of whether they should have allowed witnesses on the sister's molestation indictment? I think under either standard of review. Well, which one do you want? Well, I would prefer to get an overview, of course. Okay. But how are you getting to a de novo review? Is this clearly not an evidentiary ruling? It is an evidentiary ruling. So I do understand that that is reviewed as abusive discretion, but generally constitutional issues are reviewed, which we have presented as a – they generally are reviewed as de novo review. Ms. Lee, wasn't the court – didn't the court allow the defendant to go ahead and testify to why he felt this way about Senior and what happened? So really his defense was not precluded, it was just minimized. Right. It was not entirely precluded, but that's not the standard. It's whether he was denied a meaningful opportunity to present a complete defense. And here, he was not allowed to present any evidence to corroborate his claim. And it's similar to a defendant testifying – raising an alibi defense and saying I was elsewhere at the time of the crime, but the court doesn't allow any other witnesses to testify that they, in fact, saw the defendant elsewhere at the time of the crime. He testified that all of this stuff happened in the background, he had this argument with them, and then his uncle, who was intoxicated, was enraged with him after the argument a week earlier, and then it culminated the day of that party when he was disrespectful to his family. And the state – Well, assuming that was true and that he was disrespectful, does that mean that he should – that the defendant should take a knife and do what he did? Well, his argument is that his uncle came at him first with a knife. Well, the physical facts of this case, you know, when you look at what was done to these two victims, doesn't show any evidence of any self-defense. His testimony is that – What did he do? He slashed somebody across the neck. He was also injured. What? He was – the defendant was also injured. He had – What, on his fingers? Yeah, on his hands. He had defensive injuries on both hands. The state sort of minimized the extent of injuries, but he was injured. He did have defensive injuries. But not any extreme injuries. No. Well, what he testified is that they had a – after the party, he and his uncle had a verbal argument in the living room. Well, I know what he testified to, but it doesn't bear out from the physical facts of the case. That's the problem that you have. What he testified to, you know, doesn't show that that actually happened here. Well, I mean – I mean, these guys were brutally knifed. There was a – Brutally murdered. It was a brutal stabbing and knife fight, but they were all involved in it. And he testified that he was randomly and wildly swinging his knife to keep them away from him. And if the sister had been able to testify, she would have provided corroboration of his motive for why his uncle would have – well, why his uncle would have a motive to attack him. And there is evidence in the record that the uncle was intoxicated and that he had a history of being violent and angry and combative when he was intoxicated. So without the sister's corroboration of the anger, the State, in its closing argument, took advantage of that. They argued – Well, if the defendant in this case had such minimal injuries described in the record, I don't see how there could have been any self-defense here. I mean, a person doesn't have to be stabbed first in order to act in self-defense. They don't have to wait to be injured in order to respond. That's not the requirement under the law. He could have no injuries and still have acted in self-defense. He did have injuries, but it's not required that he wait until he's stabbed first or shot first for him to act. You mean if somebody comes at you with a knife, the first thing you should do is slash their throat, is that it? I don't know if that first thing he did is slash their throat. They were stabbed in other parts of the body also. It wasn't just his – But where was he stabbed? His hands. Those aren't normally defensive wounds. Right, exactly. That had nothing to do with – He was defending himself. It does have to do with it. The defensive wounds, it corroborates that he was fighting back against someone who was stabbing him. Like I said, the state, in closing argument, took advantage of the lack of corroboration and basically said that he was lying. They argued that, sarcastically, this poor man happened to be living with a dirty little secret for the better part of 20 years. Somehow this dirty little secret was festering and simmering. When you have a story, you're making things – This is on page 24 of my brief. When you have a story, when you're making things up, it's kind of hard to hold the pieces together. It's ridiculous. It's a story that was concocted to divert your attention away from the facts of this case when the state knew that there was corroborating evidence, that this, in fact, there was evidence of six people or five other people willing to testify that this did happen. And they're saying he made the whole thing up. That certainly prejudiced him and allowed the state to attack his credibility. And then along with that, they further attacked his credibility with this void conviction that they impeached him on. Well, didn't his lawyer bring that out? No. His lawyer didn't object to it at all. What, the defense lawyer didn't bring that out, his conviction? Well, he testified to it at the state cross-examination. He brought it up preemptively. Wasn't it brought up on direct? Yeah, it was brought up on direct. Wasn't that part of the trial strategy of his lawyer? What kind of strategy would it be helpful to impeach a defendant with a conviction that's unconstitutionally void? It doesn't help him, especially when the state went on to argue in closing argument that how else do we know he's a liar? He's a convicted felon. The judge is going to tell you to consider that in determining his believability. He was convicted of aggravated unlawful use of a weapon. You can consider that when you go back in the room and decide, was Vashon telling the truth or is he a liar? So they attacked his credibility on two different grounds, one of which there was evidence to support his claim. And this, they're attacking his credibility and calling him a liar based on a conviction that's void. And both of those errors combined rendered the outcome of the trial unreliable and fundamentally unfair. So you think if there would be a retrial, the verdict might be any different in this case? There's a reasonable chance it could be if the conviction, the void conviction is excluded, and if he was able to have his sister testify to corroborate his claim as to why there was this argument between them. Does everyone have reserved some time for review? Yes, thank you. Good morning again, Your Honor's Counsel. Again, David Iskowitz with the Cook County State's Attorney for the People. With respect to the trial court's decision to exclude Nicole's testimony, we maintain that the proper standard of review is an abuse of discretion because the defendant was not precluded from presenting a defense. In fact, they present a self-defense and imperfect self-defense theory. The defendant's argument is that as part of this defense, the trial court erred in excluding certain segments of evidence, and that would be a pure evidentiary claim reviewable for an abuse of discretion. The defendant still loses, though, we maintain, under a de novo review because the testimony from Nicole about alleged sexual abuse from 1987, 20 years earlier, this crime occurred in 2007, would not have added anything to the defendant's defense, especially considering the defendant himself testified that the abuse occurred and that it caused the escalation in tension in the household in the weeks preceding the murders. The State never contested the fact that the abuse occurred. If the State had contested the fact that the abuse had occurred, the defendant might have a better argument, but the record doesn't show that that argument, that the State ever fronted an argument that this abuse didn't occur, therefore, his story cannot have made sense. The State's argument with respect to the defendant's story was that it didn't make sense, given the severity of the crime and the circumstances under which the crimes occurred. Again, there was no contention that the abuse didn't occur, and so that aspect of Nicole's testimony would not have bolstered anything. With respect to the ineffective assistance of counsel claim, the Court can most efficiently resolve this on Strickland's prejudice prong. Even if counsel had objected, even if this testimony – I'm sorry, even if the fact of his AUUW conviction had been excluded, there's no reasonable probability that the result of the trial would have been different. Guilty verdicts were still assured, and there's no undermining of confidence in the outcome of the jury's verdict here. Do you think the use of that invalid conviction could have impacted his sentencing? Sentencing, no, Your Honor. It couldn't have. His extended-term sentences were based on the brutality of the crime and the age of the victims, the fact of a prior firearms conviction would not play into that, and there's nothing in the record indicating that the prosecutor, to the best of my recollection, referenced that firearms offense at the sentencing hearing where these crimes were committed with knives. The defendant maintains that this was a prejudicial component of the trial because it reduced his credibility in the eyes of the jury. When viewing the record as a whole, however, the facts show that the defendant's credibility by the time the jury retired to deliberate was already pretty much well shot. The physical evidence, as the Court has mentioned here, belied any claim that it was a self-defense case. The defendant claims that his uncle, 60 years old, accosted him with a knife. His uncle was wearing boxer shorts, no shoes, no shirt, no pants. He claims that his 83-year-old grandfather, who was just recovering from a cancer diagnosis, who was unable to hold utensils, had to use furniture to get around a room to hold on to, and who was wearing a colostomy bag, also brandished a knife and tried to pull him off of Charles Jr. The defendant claims that he waved the knife around wildly, randomly, blindly, but I encourage the Court, if it hasn't, to look at the autopsy photos of these victims showing that all of the wounds were to the head, to the neck, and to the upper chest. And the most serious wounds, which caused asphyxiation and blood loss, fatal blood loss, just happened to occur at the juncture of the carotid artery, the jugular vein, and the trachea. They were sliced open. It was a slaughter. The defendant's post-murder conduct also reflected on his credibility. The defendant had some superficial cuts on his hands. I might also note that the two victims had significant defensive wounds on their palms and on their hands, which the medical examiner opined came from a sharp object, likely one of the knives. So after he did this, the defendant had several decisions to make. He had two phones at his disposal, his cell phone and the portable phone that he said he had retrieved from the living room and brought to the bedroom, but the photo show was still in the living room, contrary to his testimony. He didn't call 911. He didn't call family. He didn't call first responders. There's a nearby police station he didn't call. He decided to just leave. But before he left, he washed up, he changed his clothes, and apparently put the knives in a bag, wrapped it up, and put it in the bathroom. This does not indicate, this does not suggest that this was a self-defense case. And finally, the last thread here on credibility is very minor, but the defendant's wounds were not – it defies common sense to believe that the defendant's wounds, several superficial cuts on the hand, were all he sustained, given his description of the severity of this fight. Because it wasn't a fight. It was first-degree murder. And there were no mitigating circumstances. The record in this case speaks for itself. The photos speak for themselves, and should guide this Court's resolution in affirming the judgment. Thank you, Your Honors. Okay, you have a couple minutes. Just briefly, immediately after the stabbings occurred, he did not call 911. He said he tried to, but he was in shock and his fingers weren't working. But he did immediately get in the car and drive two blocks, three blocks to his aunt's house, the victim's daughter and sister, and confessed to her exactly what had just happened. He wasn't trying to hide at all that a fight had just occurred at the house. He told her within minutes, or within at least less than an hour, of what had just happened. He wasn't hiding it in any sort of way. Then he went to the hospital to be treated for his injuries, and she called 911. So I don't think at all that his reaction or his actions after leaving the house support... Did he tell anybody he was attacked? At the hospital he did. Before that? Yeah, he said that he told his aunt that. He said they came at me. He said that his uncle had come at him with a knife. And what did he tell that to? His aunt, who was, like I said, the daughter of his grandfather and the sister of his uncle. Do you think the Ag UUW conviction impacted his sons? His sons was mandatory, so it couldn't have. But I do think under NRENG, the Supreme Court has made clear that an Ag UUW conviction should not be used under any circumstance and for any reason. And here it was used, especially combined with the state's closing argument where they call him a liar because of the conviction and they say, how do we know he's not telling the truth because of this conviction when it shouldn't have been used for any reason or any purpose? It definitely prejudiced him, on top of additional prejudice from the lack of corroborating evidence from his sister. And the state's claim that the state blow did not contest that the abuse occurred is not accurate. First of all, they argued in closing that he made the whole thing up and that it didn't happen. And in the motion, the pretrial motion, they argued that there was no evidence that it happened because he hadn't been charged with that crime or convicted of it. So they did contest, absolutely contested, that it happened. If you don't have any other questions, I just would ask you to please reverse this conviction and remand for a new trial. Thank you. Thank you for giving us an interesting case and we'll take it under advisement. We'll have an opinion or an argument for you shortly.